**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.  1:22-cv-1829

UNITED STATES OF AMERICA, and
THE STATE OF COLORADO,

        Plaintiffs,

v.

DCP OPERATING COMPANY, LP;
DCP MIDSTREAM HOLDING, LLC;
DCP LP HOLDINGS, LLC;
DCP PARTNERS COLORADO LLC;
DCP ASSETS HOLDING, LP;
DCP LUCERNE 2 PLANT LLC

        Defendants.

---

## COMPLAINT

---

        Plaintiffs, the United States of America, by authority of the Attorney General of the United States and acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Colorado, on behalf of the Colorado Department of Public Health and Environment, Division of Administration ("CDPHE"), file this Complaint and allege as follows:

### STATEMENT OF THE CASE

        1.    This is a civil action against Defendants DCP Operating Company, LP; DCP Midstream Holding, LLC; DCP LP Holdings, LLC; DCP Partners Colorado LLC; DCP Assets Holding, LP; and DCP Lucerne 2 Plant LLC pursuant to Section 113(b) of the Clean Air Act (the

"Act"), 42 U.S.C. § 7413(b), and Sections 121 and 122 of the Colorado Air Pollution Prevention and Control Act (the "Colorado Act"), C.R.S. §§ 25-7-121 and 122.

2.      The United States and the State of Colorado seek permanent injunctive relief and civil penalties for Defendants' violations of Section 111 of the Act, 42 U.S.C. § 7411, and regulations promulgated under the Act and the Colorado Act pertaining to leak detection and repair requirements for air pollutants emitted from onshore natural gas processing plants located in Colorado.

3.      Defendants' failure to comply with leak detection and repair requirements has resulted in excess emissions of volatile organic compounds ("VOCs"), a precursor to ground-level ozone.  The noncompliance alleged in this Complaint spans thousands of failures to monitor and repair leaking equipment at seven natural gas processing plants, six of which are located in a nonattainment area for ozone that covers Adams, Arapahoe, Boulder, Broomfield, Denver, Douglas, Jefferson, and Weld Counties, and portions of Larimer County.

4.      Exposure to ground-level ozone can cause lung function diminution, pulmonary inflammation, and other symptoms.  Children, people with respiratory illness, the elderly, and those working or exercising outdoors have a higher risk of adverse health effects from exposure to ozone.

5.      VOCs form ground-level ozone by reacting with sources of oxygen molecules, *e.g.*, nitrogen oxides and carbon monoxide, in the atmosphere in the presence of sunlight. Ground-level ozone is one of six criteria pollutants for which the EPA has promulgated National Ambient Air Quality Standards ("NAAQS") due to its adverse effects on human health and the environment.

6.      Defendants own and operate natural gas processing plants in Colorado, including: Spindle Facility, Roggen Facility, Kersey/Mewbourn Facility, Greeley Facility, Lucerne Facility, and Platteville Facility (collectively "Covered Facilities").

7.      The Covered Facilities are located in an area of Colorado where air quality is so degraded that it exceeds the relevant standards for ground-level ozone and thus is considered to be in "serious nonattainment" with the 2008 ozone NAAQS.  Unlawful excess emissions of VOCs from Defendants' natural gas processing plants potentially contribute to this exceedance of the ozone NAAQS.

8.      Until December 31, 2019, Defendants owned and operated the Ladder Creek Facility, a natural gas processing plant located in Colorado.  The Ladder Creek Facility is located in an area in attainment with the ozone NAAQS.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, and 1355.

10.     This Court has supplemental jurisdiction over the state law claims asserted by Colorado pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this judicial district pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b), 1391(c), and 1395(a), because the violations that constitute the basis of this Complaint occurred in, and Defendants conduct business in, this judicial district.

## AUTHORITY AND NOTICE

12.     The United States has authority to bring this action on behalf of the Administrator of the EPA under 28 U.S.C. §§ 516, 519, and Section 305 of the Act, 42 U.S.C. § 7605.

13.     Colorado has authority to bring this action on behalf of CDPHE under C.R.S. §§ 25-7-121 and 122.

14.     Notice of the commencement of this action has been given to the appropriate air pollution control agency in the State of Colorado as required by Section 113(b) of the Act, 42 U.S.C. § 7413(b).

## DEFENDANT

15.     Defendants are Delaware limited partnerships or limited liability companies with corporate headquarters in Denver, Colorado.

16.     Defendants are each a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

17.     Defendants are the "owners and operators" of the Covered Facilities.

18.     DCP Operating Company, LP was the "owner and operator" of the Ladder Creek Facility until December 31, 2019.

## STATUTORY AND REGULATORY BACKGROUND

### A.     National Ambient Air Quality Standards for Ozone

19.     Section 108 of the Act, 42 U.S.C. § 7408, directs the Administrator of the EPA to identify those air pollutants which "may reasonably be anticipated to endanger public health or welfare" and to issue air quality criteria for those pollutants based on "the latest scientific knowledge" about the effects of the pollutants on public health and the environment.  The pollutants identified as such are called "criteria pollutants."

20.     Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of the EPA to promulgate regulations establishing NAAQS for criteria pollutants.  The primary NAAQS must be set at the level "requisite to protect the public health" with an adequate margin of safety,

and the secondary standard is intended to protect "the public welfare."  According to Section 302(h) of the Act, 42 U.S.C. § 7602(h), public welfare effects are "effects on soils, water, crops, vegetation" and other environmental impacts including, but not limited to, effects on animals, wildlife, property, and "effects on economic values."

21.    NAAQS are implemented within air quality control regions (or "areas") throughout individual states.  An area with an ambient air concentration that meets the NAAQS for a particular criteria pollutant is an "attainment" area.  An area with ambient air concentrations that exceed the NAAQS is a "nonattainment" area.  And an area that cannot be classified due to insufficient data is "unclassifiable."

22.    In 2008, the EPA established a primary and secondary NAAQS for ozone of 0.075 parts-per-million ("ppm") (measured as an 8-hour average).  73 Fed. Reg. 16,436 (Mar. 27, 2008).  In 2015, the EPA lowered the primary and secondary NAAQS for ozone to 0.070 ppm (measured as an 8-hour average).  80 Fed. Reg. 65,292 (Oct. 26, 2015).

23.    The EPA designated the following counties in Colorado as being in nonattainment with the 2008 and/or 2015 ozone NAAQS: Adams, Arapahoe, Boulder, Broomfield, Denver, Douglas, Jefferson, and Weld Counties, and portions of Larimer County ("Denver Nonattainment Area").  *See* 77 Fed. Reg. 30,088 (May 21, 2012); 83 Fed. Reg. 25,792 (June 4, 2018); 86 Fed. Reg. 67,864 (November 30, 2021).

24.    Over three million people live in the Denver Nonattainment Area and are potentially affected by exposure to ground-level ozone.

25.    The potential adverse effects on human health of ozone pollution are well known. Epidemiological studies reviewed by the EPA in setting the ozone NAAQS indicate that potential adverse effects on human health of short-term exposures to ground-level ozone include

lung function diminution, respiratory symptoms, and pulmonary inflammation.  73 Fed. Reg. at

16,445.  The American Thoracic Society has noted that individuals uniquely at much higher risk

for adverse health effects from ozone exposure include children, people with respiratory illness,

the elderly, outdoor workers, and healthy children and adults who exercise outdoors.  *Id*. at

16,462.

> ### B.    New Source Performance Standards

26.    Section 111(b) of the Act authorizes the Administrator of the EPA to promulgate

standards of performance applicable to "new sources" within categories of sources that cause

"air pollution which may reasonably be anticipated to endanger public health or welfare."

42 U.S.C. § 7411(b).

27.    A "new source" under Section 111 is any stationary source, the construction or

modification of which is commenced after the promulgation of the standards of performance that

will be applicable to such source.  42 U.S.C. § 7411(a)(2).

28.    A "stationary source" is a building, structure, facility, or installation that emits or

may emit any air pollutant.  42 U.S.C. § 7411(a)(3).

29.    A "modification" is "any physical change in . . . a stationary source which

increases the amount of any air pollutant emitted by such source."  42 U.S.C. § 7411(a)(4).

30.    In 1979, the EPA listed "Crude Oil and Natural Gas Production" as a source

category that contributes significantly to air pollution and for which standards of performance

would be established.  44 Fed. Reg. 49,222 (Aug. 21, 1979).

31.    It is unlawful for owners and operators of any new source to operate in violation

of applicable standards of performance after the standards have gone into effect.  42 U.S.C.

§ 7411(e).

### 1.     Subpart KKK

32.     In 1985, based on the determination that emissions from crude oil and natural gas production cause or significantly contribute to air pollution that may reasonably be anticipated to endanger public health or welfare, the EPA promulgated "Standards of Performance for Equipment Leaks of VOC from Onshore Natural Gas Processing Plants" under Section 111 of the Act.  50 Fed. Reg. 26,124 (June 24, 1985).

33.     Each of these standards is a "standard of performance" within the meaning of Section 111(a)(1) of the Act, 42 U.S.C. § 7411(a)(1), or a "design, equipment, work practice, or operational standard, or combination thereof" under Section 111(h) of the Act, 42 U.S.C. § 7411(h).  These standards are set forth in 40 C.F.R. part 60, subpart KKK ("Subpart KKK"), §§ 60.630–636.

34.     Subpart KKK incorporates certain provisions of 40 C.F.R. part 60, subpart VV ("Subpart VV"), by reference.  *See* 40 C.F.R. §§ 60.632(a), 60.482-1(a), (b) and (d), and 60.482-2 through 60.482-10.  These Subpart VV provisions require owners and operators of regulated facilities to monitor equipment such as pumps and valves for leaks of air pollutants, and to repair leaks.

35.     Owners or operators of onshore natural gas processing plants subject to Subpart KKK must monitor equipment using "Method 21," a test method that entails, *inter alia*, using a calibrated meter with a probe to carefully measure around equipment for leaks.  40 C.F.R. §§ 60.632(d) and 60.485.  For purposes of Subpart KKK, a leak is detected from pumps and valves in natural gas processing plants if the detection instrument reading is 10,000 ppm or greater.  40 C.F.R. §§ 60.482-2 and 60.482-7.

36.     Pursuant to its authority under the Colorado Act, C.R.S. §§ 25-7-105(1)(b), 106(6), and 109, CDPHE adopted Subparts VV and KKK, including all amendments, into its Colorado Air Quality Control Commission Regulation 6, Part A. 5 Colo. Code Regs. § 1001-8:A ("Regulation 6").

### 2.     Subpart OOOO

37.     In 2012, EPA promulgated "Standards of Performance for Crude Oil and Natural Gas Production, Transmission and Distribution" under Section 111 of the Act.  77 Fed. Reg. 49,490, 49,542 (Aug. 16, 2012).

38.     Each of these standards is a "standard of performance" within the meaning of Section 111(a)(1) of the Act, 42 U.S.C. § 7411(a)(1), or a "design, equipment, work practice, or operational standard, or combination thereof" under Section 111(h) of the Act, 42 U.S.C. § 7411(h). These standards are set forth in 40 C.F.R. part 60, subpart OOOO ("Subpart OOOO"), §§ 60.5360–5430.

39.     Subpart OOOO applies to "affected facilities" for which owners or operators commence construction, modification or reconstruction after August 23, 2011, and on or before September 18, 2015.  40 C.F.R. § 60.5365.

40.     A "modification" is "any physical change in . . . a stationary source which increases the amount of any air pollutant emitted by such source."  42 U.S.C. § 7411(a)(4); 5 Colo. Code Regs. § 1001-8:A.

41.     A "modification" that triggers the applicability of Subpart OOOO includes the addition or replacement of equipment for the purpose of process improvement which increases emissions, unless the equipment addition or replacement is accomplished without a "capital

expenditure." 42 U.S.C. § 7411(a)(4); 40 C.F.R. §§ 60.2 and 60.5365(f)(1); 5 Colo. Code Regs. §1001-8:A.

42.     Subpart OOOO incorporates certain provisions of 40 C.F.R. part 60, subpart VVa ("Subpart VVa") by reference.  *See* 40 C.F.R. §§ 60.5400, 60.482-1a(a), (b) and (d), 60.482-2a, and 60.482-4a through 60.482-11a.  These Subpart VVa provisions require owners and operators of "affected facilities" to monitor equipment such as pumps and valves for leaks of air pollutants, and to repair leaks.

43.     Owners or operators of onshore natural gas processing plants subject to Subpart OOOO must comply with 40 C.F.R. § 60.485a, which requires owners and operators to use Method 21 in monitoring leaks from equipment.  40 C.F.R. § 60.5400(d).  For purposes of Subpart OOOO, a leak is detected from pumps in natural gas processing plants if the detection instrument reading is 2,000 ppm or greater, and from valves and connectors if the detection instrument reading is 500 ppm or greater.  40 C.F.R. §§ 60.482-2a, 60.487-7a, and 60.482-11a.

44.     Pursuant to its authority under the Colorado Act, C.R.S. §§ 25-7-105(1)(b), 106(6), and 109, CDPHE adopted relevant portions of Subpart OOOO, including all amendments, into its Regulation 6, Part A on October 18, 2012, effective as of December 15, 2012.  5 Colo. Code Regs. § 1001-8:A.  CDPHE fully adopted Subpart OOOO on February 20, 2014, effective as of April 14, 2014.

45.     Pursuant to its authority under the Colorado Act, C.R.S. §§ 25-7-105(1)(b), 106(6), and 109, CDPHE adopted Subpart VVa, including all amendments, into its Regulation 6, Part A on July 21, 2011, effective as of September 15, 2011.  5 Colo. Code Regs. § 1001-8:A.

46.     Under Colorado Regulation 7, all natural gas processing plants located within the 8-hour Ozone Control Area are subject to and must comply with the leak detection and repair

requirements of Subpart OOOO regardless of the facility's date of construction, unless the facility is subject to 40 C.F.R. Part 60, Subpart OOOOa.  5 Colo. Code Regs. §§ 1001-9:D, I.G.1. and 1001-8:A.  Natural gas processing plants within the 8-Hour Ozone Control Area constructed before January 1, 2018 were subject to and required to comply with Subpart OOOO beginning January 1, 2019.  5 Colo. Code Regs. § 1001-9:D, I.G.3.

## GENERAL ALLEGATIONS

### A.     The Facilities

47.     Defendants are, or were at relevant times, the "owner and operator" of the Covered Facilities and the Ladder Creek Facility within the meaning of Section 111(a)(5) of the Act, 42 U.S.C. § 7411(a)(5), and C.R.S. § 25-7-103(18.4).

48.     The Covered Facilities and the Ladder Creek Facility are each a "new source" and a "stationary source" within the meaning of Sections 111(a)(2) and (a)(3) of the Act, 42 U.S.C. § 7411(a)(2), (a)(3), and C.R.S. § 25-7-103(23).  *See also* 5 Colo. Code Regs. §§ 1001-5:A.I.B.29, I.B.43.

49.     When pumps, valves, connectors, or other equipment used at the Covered Facilities or the Ladder Creek Facility leak, they can release VOCs into the atmosphere within the Denver Nonattainment Area.

### B.     Subpart KKK: Applicability to Covered Facilities and Ladder Creek Facility

50.     A "natural gas processing plant" is "any processing site engaged in the extraction of natural gas liquids from field gas, fractionation of mixed natural gas liquids to natural gas products, or both."  40 C.F.R. § 60.631.  "Onshore" means all facilities except those that are located in the territorial seas or on the outer continental shelf.  *Id*.

51.     The Covered Facilities and the Ladder Creek Facility are each an "onshore natural gas processing plant" within the meaning of 40 C.F.R. § 60.630.

10

52.     An "affected facility" in an onshore natural gas processing plant is "[t]he group of all equipment except compressors within a process unit."  40 C.F.R. § 60.630(a)(3).

53.     A "process unit" is "equipment assembled for the extraction of natural gas liquids from field gas, the fractionation of the liquids into natural gas products, or other operations associated with the processing of natural gas products.  A process unit can operate independently if supplied with sufficient feed or raw materials and sufficient storage facilities for the products." 40 C.F.R. § 60.631.

54.     The Covered Facilities and the Ladder Creek Facility contain multiple "process units" within the meaning of 40 C.F.R. § 60.631.

55.     Subpart KKK defines "equipment" as each pump, pressure relief device, open-ended valve or line, valve, compressor, and flange or other connector that is in VOC service or in wet gas service, and any device or system required by Subpart KKK.  40 C.F.R. § 60.631.

56.     The Covered Facilities and the Ladder Creek Facility each contain "equipment" within the meaning of 40 C.F.R. § 60.631.

57.     At times relevant to this Complaint, Defendants were subject to the requirements of Subpart KKK as to equipment in VOC service or wet gas service at the Covered Facilities and at the Ladder Creek Facility.

**C.     Subpart OOOO: Applicability to Covered Facilities**

58.     A "natural gas processing plant" is "any processing site engaged in the extraction of natural gas liquids from field gas, fractionation of mixed natural gas liquids to natural gas products, or both."  40 C.F.R. § 60.5430.  "Onshore" means all facilities except those that are located in the territorial seas or on the outer continental shelf.  *Id*.

11

59.     The Covered Facilities are each an "onshore natural gas processing plant" within the meaning of 40 C.F.R. § 60.5430.

60.     An "affected facility" in an onshore natural gas processing plant for purposes of Subpart OOOO is "the group of all equipment, except compressors, within a process unit."  40 C.F.R. § 60.5365(f).

61.     Subpart OOOO defines "process unit" as "components assembled for the extraction of natural gas liquids from field gas, the fractionation of the liquids into natural gas products, or other operations associated with the processing of natural gas products.  A process unit can operate independently if supplied with sufficient feed or raw materials and sufficient storage facilities for the products."  40 C.F.R. § 60.5430.

62.     The Covered Facilities each contain multiple "process units" within the meaning of 40 C.F.R. § 60.5430.

63.     Subpart OOOO defines "equipment" as each pump, pressure relief device, open-ended valve or line, valve, and flange or other connector that is in VOC service or in wet gas service, and any device or system required by Subpart OOOO.  40 C.F.R. § 60.5430.

64.     The Covered Facilities each contain "equipment" within the meaning of 40 C.F.R. § 60.5430.

65.     From approximately October 2013 to June 2015, Defendants installed equipment in one or more process units at the Greeley Facility.  The equipment installation constituted "modifications" under Section 111 of the Act, 42 U.S.C. § 7411(a)(4), and caused Defendants to be subject to Subpart OOOO at one or more process units at the Greeley Facility.  40 C.F.R. § 60.5370(a); 5 Colo. Code Regs. § 1001-8:A.

66.     From approximately October 2013 to September 2015, Defendants installed equipment in one or more process units at the Kersey/Mewbourn Facility.  The equipment installation constituted "modifications" under Section 111 of the Act, 42 U.S.C. § 7411(a)(4), and caused Defendants to be subject to Subpart OOOO at one or more process units at the Kersey/Mewbourn Facility.  40 C.F.R. § 60.5370(a); 5 Colo. Code Regs. § 1001-8:A.

67.     From approximately October 2012 to September 2015, Defendants installed equipment in one or more process units at the Roggen Facility.  The equipment installation constituted "modifications" under Section 111 of the Act, 42 U.S.C. § 7411(a)(4), and caused Defendants to be subject to Subpart OOOO at one or more process units at the Roggen Facility. 40 C.F.R. § 60.5370(a); 5 Colo. Code Regs. § 1001-8:A.

68.     The Covered Facilities are all located within the 8-Hour Ozone Control Area.  To the extent Subpart OOOO did not already apply, Defendants were subject to the leak detection and repair requirements of Subpart OOOO at all Covered Facilities since at least January 1, 2019.

### FIRST CLAIM
### (Covered Facilities)
### Failure to Repair Leaking Equipment in Violation of Subpart OOOO

69.     The United States and Colorado reallege and incorporate the previous Paragraphs as if fully set forth within.

70.     With certain exceptions not relevant here, pursuant to Subpart OOOO and Colorado's Regulation 6, Pt. A, Defendants are required to monitor pumps, valves, and connectors in gas/vapor and light liquid service in subject process units initially and at specified frequencies thereafter.  40 C.F.R. §§ 60.5400(a), 60.482-2a(a), 60.482-7a(a) and (c), and 60.482-11a(a) and (b)(3); 5 Colo. Code Regs. § 1001-8:A.

71.     If any such equipment is found leaking above the applicable regulatory threshold, Defendants are required to make a first attempt at repair within five days after each leak is detected, and in any event to repair each leak as soon as practicable, but not later than fifteen days after detection.  40 C.F.R. §§ 60.5400(a), 60.482-2a(b)(1) and (c), 60.482-7a(b) and (d), and 60.482-11a(b)(2) and (d); 5 Colo. Code Regs. § 1001-8:A.

72.     Repaired means that equipment is adjusted, or otherwise altered, in order to eliminate a leak and is re-monitored as specified in 40 C.F.R. § 60.485a(b) to verify that emissions from the equipment are below the applicable leak definition.  40 C.F.R. § 60.481a; 5 Colo. Code Regs. § 1001-8:A.

73.     From approximately October 1, 2013 until at least December 31, 2018, Defendants failed to make a first attempt at repair of one or more leaks at the Greeley Facility within five days after each leak was detected and failed to repair one or more leaks within fifteen days after each leak was detected, in violation of 40 C.F.R. §§ 60.5400(a), 60.482-2a(b)(1) and (c)(2), 60.482-7a(b) and (d)(2), 60.482-11a(b)(2) and (d); and 5 Colo. Code Regs. § 1001-8:A.

74.     From approximately October 1, 2013 until at least December 31, 2018, Defendants failed to make a first attempt at repair of one or more leaks at the Kersey/Mewbourn Facility within five days after each leak was detected and failed to repair one or more leaks within fifteen days after each leak was detected, in violation of 40 C.F.R. §§ 60.5400(a), 60.482-2a(b)(1) and (c)(2), 60.482-7a(b) and (d)(2), 60.482-11a(b)(2) and (d); and 5 Colo. Code Regs. § 1001-8:A.

75.     From approximately October 1, 2012 until at least June 30, 2021, Defendants failed to make a first attempt at repair of one or more leaks at the Roggen Facility within five days after each leak was detected and failed to repair one or more leaks within fifteen days after

each leak was detected, in violation of 40 C.F.R. §§ 60.5400(a), 60.482-2a(b)(1) and (c)(2), 60.482-7a(b) and (d)(2), 60.482-11a(b)(2) and (d); and 5 Colo. Code Regs. § 1001-8:A (for violations on or after December 15, 2012).

76.    From January 23, 2019 until at least May 30, 2019, Defendants failed to repair one or more leaks at the Platteville Facility within fifteen days after each leak was detected, in violation of 40 C.F.R. §§ 60.5400 and 60.482-7a(d)(1); and 5 Colo. Code Regs. §§ 1001-9:XII.G.1 (2019), 1001-8:A.

77.    From January 1, 2019 until at least June 10, 2021, Defendants failed to repair one or more leaks at the Lucerne Facility within fifteen days after each leak was detected, in violation of 40 C.F.R. §§ 60.5400 and 60.482-7a(d)(1); and 5 Colo. Code Regs. § 1001-8:A.

78.    From January 1, 2020 until at least July 30, 2020, Defendants failed to repair one or more leaks at the Spindle Facility within fifteen days after each leak was detected, in violation of 40 C.F.R. §§ 60.5400 and 60.482-7a(d)(1); and 5 Colo. Code Regs. § 1001-8:A.

79.    Delay of repair of equipment for which leaks have been detected is allowed if repair within fifteen days is technically infeasible without a process unit shutdown.  40 C.F.R. § 60.482-9a; 5 Colo. Code Regs. § 1001-8:A.  Repair of this equipment must occur before the end of the next process unit shutdown, with certain exceptions not relevant here.  40 C.F.R. § 60.482-9a; 5 Colo. Code Regs. §1001-8:A.

80.    From approximately October 1, 2013 until at least December 31, 2018, Defendants failed to repair one or more leaks at the Greeley Facility within fifteen calendar days of detecting a leak where repair was technically feasible and a process unit shutdown was not required, in violation of 40 C.F.R. §§ 60.5400, 60.5401(b), 60.482-2a, 60.482-4a to 60.482-11a; and 5 Colo. Code Regs. § 1001-8:A.

81.     From approximately October 1, 2013 until at least December 31, 2018, Defendants failed to repair one or more leaks at the Kersey/Mewbourn Facility within fifteen calendar days of detecting a leak where repair was technically feasible and a process unit shutdown was not required, in violation of 40 C.F.R. §§ 60.5400, 60.5401(b), 60.482-2a, 60.482-4a to 60.482-11a; and 5 Colo. Code Regs. § 1001-8:A.

82.     From approximately October 1, 2012 until at least June 30, 2021, Defendants failed to repair one or more leaks at the Roggen Facility within fifteen calendar days of detecting a leak where repair was technically feasible and a process unit shutdown was not required, in violation of 40 C.F.R. §§ 60.5400, 60.5401(b), 60.482-2a, 60.482-4a to 60.482-11a; and 5 Colo. Code Regs. § 1001-8:A (for violations on or after December 15, 2012).

83.     Defendants failed to repair one or more leaks designated for delay of repair at the Roggen Facility during process unit shutdowns in July and October 2020 in violation of 40 C.F.R. §§  60.5400, 60.482-9a; and 5 Colo. Code Regs. §§ 1001-9:XII.G.1 (2019), 1001-8:A.

84.     Defendants failed to repair one or more leaks designated for delay of repair at the Spindle Facility during a process unit shutdown in October 2020 in violation of 40 C.F.R. §§  60.5400, 60.482-9a; and 5 Colo. Code Regs. §§ 1001-9:XII.G.1 (2019), 1001-8:A.

85.     Each failure by Defendants to make a first attempt at repair within five days after a leak is detected, repair leaking equipment within fifteen days after a leak is detected, or repair leaks of equipment designated for delay of repair during a process unit shutdown, constitutes a separate violation of Subpart OOOO, Section 111 of the Act, and 5 Colo. Code Regs. § 1001-8:A (for violations on or after December 15, 2012).

## SECOND CLAIM
### (Greeley, Kersey/Mewbourn, Roggen Facilities)
### Failure to Monitor Equipment in Violation of Subpart OOOO

86.     The United States and Colorado reallege and incorporate the previous Paragraphs as if fully set forth within.

87.     Subpart OOOO requires monthly monitoring of pumps, quarterly monitoring of valves, and annual monitoring of connectors unless the regulations provide for less frequent monitoring.  40 C.F.R. §§ 60.5400, 60.482-2a, 60.482-7a, 60.482-11a; and 5 Colo. Code Regs. § 1001-8:A.

88.     From approximately October 1, 2013 until at least December 31, 2018, Defendants failed to monitor one or more pumps, valves, or connectors for leaks at the Greeley Facility, in violation of 40 C.F.R. §§ 60.5400(a), 60.482-2a, 60.482-7a, 60.482-11a(a) and (b); and 5 Colo. Code Regs. § 1001-8:A.

89.     From approximately October 1, 2013 until at least December 31, 2018, Defendants failed to monitor one or more pumps, valves, or connectors for leaks at the Kersey/Mewbourn Facility, in violation of 40 C.F.R. §§ 60.5400(a), 60.482-2a, 60.482-7a, 60.482-11a(a) and (b); and 5 Colo. Code Regs. § 1001-8:A.

90.     From approximately October 1, 2012 until at least December 31, 2018, Defendants failed to monitor one or more pumps, valves, or connectors for leaks at the Roggen Facility, in violation of 40 C.F.R. §§ 60.5400(a), 60.482-2a, 60.482-7a, 60.482-11a(a) and (b); and 5 Colo. Code Regs. § 1001-8:A (for violations on or after December 15, 2012).

91.     Each failure by Defendants to perform required monthly, quarterly, or annual monitoring constitutes a separate violation of Subpart OOOO, Section 111 of the Act, and 5 Colo. Code Regs. § 1001-8:A.

**THIRD CLAIM**
**(Greeley, Kersey/Mewbourn, Roggen Facilities)**
**Recordkeeping and Reporting Violations of Subpart OOOO**

92.     The United States and Colorado reallege and incorporate the previous Paragraphs
as if fully set forth within.

93.     Under Subpart OOOO Defendants are required to keep records of compliance
with Subpart OOOO, including information on all required monitoring events.  40 C.F.R.
§§ 60.5400, 60.486a; 5 Colo. Code Regs. § 1001-8:A.  Defendants are required to submit
information, including information on leaks detected and repairs, in a semiannual report to the
Administrator.  40 C.F.R. §§ 60.5400, 60.487a; 5 Colo. Code Regs. § 1001-8:A.

94.     From approximately October 1, 2013 until at least December 31, 2018,
Defendants failed to keep information required by Subpart OOOO for the Greeley Facility.
Defendants likewise failed to submit this information in semiannual reports to the Administrator.
Defendants have violated 40 C.F.R. §§ 60.5400(e), 60.5421, 60.5422, 60.486a, 60.487a; and 5
Colo. Code Regs. § 1001-8:A (for violations on or after December 15, 2012).

95.     From approximately October 1, 2013 until at least December 31, 2018,
Defendants failed to keep information required by Subpart OOOO for the Kersey/Mewbourn
Facility.  Defendants likewise failed to submit this information in semiannual reports to the
Administrator.  Defendants have violated 40 C.F.R. §§ 60.5400(e), 60.5421, 60.5422, 60.486a,
60.487a; and 5 Colo. Code Regs. § 1001-8:A (for violations on or after December 15, 2012).

96.     From approximately October 1, 2012 until at least June 30, 2021, Defendants
failed to keep information required by Subpart OOOO for the Roggen Facility.  Defendants
likewise failed to submit this information in semiannual reports to the Administrator.

18

Defendants have violated 40 C.F.R. §§ 60.5400(e), 60.5421, 60.5422, 60.486a, 60.487a; and 5 Colo. Code Regs. § 1001-8:A (for violations on or after December 15, 2012).

97.     Each failure by Defendants to keep required records and submit information in semiannual reports to the Administrator constitutes a separate violation of Subpart OOOO, Section 111 of the Act, and 5 Colo. Code Regs. § 1001-8:A.

**FOURTH CLAIM**
**(Covered Facilities and Ladder Creek Facility)**
**Failure to Repair Leaking Equipment in Violation of Subpart KKK**

98.     The United States and Colorado reallege and incorporate the previous Paragraphs as if fully set forth within.

99.     With certain exceptions not relevant here, pursuant to Subpart KKK and Colorado's Regulation 6, Pt. A, Defendants are required to monitor pumps and valves in gas/vapor and light liquid service in subject process units initially and at specified frequencies thereafter.  40 C.F.R. §§ 60.632, 60.482-2(a), 60.482-7(a); 5 Colo. Code Regs. § 1001-8:A.

100.     If any such equipment is found leaking above the applicable regulatory threshold, Defendants are required to make a first attempt at repair within five days after each leak is detected, and in any event to repair each leak as soon as practicable, but not later than fifteen days after detection.  40 C.F.R. §§ 60.632, 60.482-2(b)(1) and (c), 60.482-7(b) and (d), 60.482-8(b) and (c); 5 Colo. Code Regs. § 1001-8:A.

101.     Repaired means that equipment is adjusted, or otherwise altered, in order to eliminate a leak and is re-monitored as specified in 40 C.F.R. §60.485(b) to verify that emissions from the equipment are below the applicable leak definition.  40 C.F.R. § 60.481; 5 Colo. Code Regs. § 1001-8:A.

102.    From approximately December 12, 2011 until December 31, 2018, Defendants failed to make a first attempt at repair of one or more leaks at the Kersey/Mewbourn Facility within five days after each leak was detected and failed to repair one or more leaks within fifteen days after each leak was detected, in violation of 40 C.F.R. §§ 60.632(a), 60.482-2 to 60.482-10; and 5 Colo. Code Regs. § 1001-8:A.

103.    From approximately November 3, 2011 until December 31, 2018, Defendants failed to make a first attempt at repair of one or more leaks at the Platteville Facility within five calendar days after the leak was detected and failed to repair one or more leaks within fifteen days after each leak was detected, in violation of 40 C.F.R. §§ 60.632(a), 60.482-2 to 60.482-10; and 5 Colo. Code Regs. § 1001-8:A.

104.    From approximately July 29, 2011 until December 31, 2018, Defendants failed to make a first attempt at repair of one or more leaks at the Roggen Facility within five days after the leak was detected and failed to repair one or more leaks within fifteen days after each leak was detected, in violation of 40 C.F.R. §§ 60.632(a), 60.482-2 to 60.482-10; and 5 Colo. Code Regs. § 1001-8:A.

105.    From approximately July 27, 2011 to December 31, 2018, Defendants failed to repair one or more leaks at the Greeley Facility within fifteen days after each leak was detected in violation of 40 C.F.R. §§ 60.632(a), 60.482-2 to 60.482-10; and 5 Colo. Code Regs. § 1001-8:A.

106.    From approximately October 23, 2012 to December 31, 2018, Defendants failed to make a first attempt at repair of one or more leaks at the Ladder Creek Facility within five days after the leak was detected, in violation of 40 C.F.R. §§ 60.632(a), 60.482-2 to 60.482-10; and 5 Colo. Code Regs. § 1001-8:A.

107.    From approximately January 9, 2018 to December 18, 2018, Defendants failed to repair one or more leaks at the Spindle Facility within fifteen days after detecting a leak, in violation of 40 C.F.R. §§ 60.632(a), 60.482-8(c)(1); and 5 Colo. Code Regs. § 1001-8:A.

108.    From approximately September 13, 2018 to December 31, 2018, Defendants failed to repair one or more leaks at the Lucerne Facility within fifteen days after detecting a leak, in violation of 40 C.F.R. §§ 60.632(a), 60.482-8(c)(1); and 5 Colo. Code Regs. § 1001-8:A.

109.    Delay of repair of equipment for which leaks have been detected is allowed if repair within fifteen days is technically infeasible without a process unit shutdown.  40 C.F.R. § 60.482-9; 5 Colo. Code Regs. § 1001-8:A.  Repair of this equipment must occur before the end of the next process unit shutdown, with certain exceptions not relevant here.  40 C.F.R. § 60.482-9; and 5 Colo. Code Regs. § 1001-8:A.

110.    From approximately April 11, 2010 until December 31, 2018, Defendants failed to repair one or more leaks at the Greeley Facility within fifteen calendar days of detecting a leak where repair was technically feasible and a process unit shutdown was not required, in violation of 40 C.F.R. §§ 60.632(a), 60.482-2 to 60.482-10; and 5 Colo. Code Regs. § 1001-8:A.

111.    From approximately October 7, 2010 until at least December 31, 2018, Defendants failed to repair one or more leaks at the Kersey/Mewbourn Facility within fifteen calendar days of detecting a leak where repair was technically feasible and a process unit shutdown was not required, in violation of 40 C.F.R. §§ 60.632(a), 60.482-2 to 60.482-10; and 5 Colo. Code Regs. § 1001-8:A.

112.    From approximately July 27, 2010 until December 31, 2018, Defendants failed to repair one or more leaks at the Roggen Facility within fifteen calendar days of detecting a leak

where repair was technically feasible and a process unit shutdown was not required, in violation of 40 C.F.R. §§ 60.632(a), 60.482-2 to 60.482-10; and 5 Colo. Code Regs. § 1001-8:A.

113.    From approximately October 29, 2010 until December 31, 2018, Defendants failed to repair one or more leaks at the Platteville Facility within fifteen calendar days of detecting a leak where repair was technically feasible and a process unit shutdown was not required, in violation of 40 C.F.R. §§ 60.632(a), 60.482-2 to 60.482-10; and 5 Colo. Code Regs. § 1001-8:A.

114.    Defendants failed to repair one or more leaks designated for delay of repair at the Spindle Facility during a process unit shutdown in September 2018, in violation of 40 C.F.R. §§ 60.632, 60.482-9; and 5 Colo. Code Regs. § 1001-8:A.

115.    Each failure by Defendants to make a first attempt at repair within five days after a leak is detected, repair leaking equipment within fifteen days after a leak is detected, or repair leaks of equipment designated for delay of repair during a process unit shutdown, constitutes a separate violation of Subpart KKK, Section 111 of the Act, and 5 Colo. Code Regs. § 1001-8:A.

## FIFTH CLAIM
### (Greeley, Kersey/Mewbourn, Roggen, and Platteville Facilities)
### Failure to Monitor Equipment in Violation of Subpart KKK

116.    The United States and Colorado reallege and incorporate the previous Paragraphs as if fully set forth within.

117.    Subpart KKK requires monthly monitoring of pumps and quarterly monitoring of valves unless the regulations provide for less frequent monitoring.  40 C.F.R. §§ 60.632(a), 60.482-2, 60.482-7; and 5 Colo. Code Regs. § 1001-8:A.

118.    From approximately October 11, 2011 to December 31, 2018, Defendants failed to monitor one or more pumps or valves at the Greeley, Kersey/Mewbourn, and Roggen

Facilities as required by Subpart KKK, in violation of 40 C.F.R. §§ 60.632(a), 60.482-2, 60.482-7; and 5 Colo. Code Regs. § 1001-8:A.

119.    With certain exceptions not relevant here, valves that Defendants designated as "difficult-to-monitor" are exempt from the monthly monitoring or quarterly monitoring requirements of Subpart KKK, 40 C.F.R. § 60.482-7, so long as Defendants designate no more than 3.0 percent of total valves as "difficult-to-monitor." 40 C.F.R. §§ 60.632(a), 60.482-7(h); and 5 Colo. Code Regs. § 1001-8:A.

120.    Subpart KKK requires annual monitoring for any valves designated as "difficult-to-monitor" under 40 C.F.R. § 60.486(f)(2). 40 C.F.R. § 60.482-7(h)(3); 5 Colo. Code Regs. § 1001-8:A.

121.    From approximately January 1, 2014 to December 31, 2014, Defendants failed to perform annual monitoring on one or more valves designated as "difficult-to-monitor" at the Roggen Facility, in violation of 40 C.F.R. §§ 60.632(a), 60.482(h)(3); and 5 Colo. Code Regs. § 1001-8:A.

122.    From approximately October 11, 2011 to October 10, 2016, Defendants designated more than 3.0 percent of the valves at the Platteville Facility as "difficult-to-monitor," resulting in one or more missed monitoring events, in violation of 40 C.F.R. §§ 60.632(a) and 60.482-7(h); and 5 Colo. Code Regs. § 1001-8:A.

123.    Each failure by Defendants to perform required monitoring constitutes a separate violation of Subpart KKK, Section 111 of the Act, and 5 Colo. Code Regs. § 1001-8:A.

**SIXTH CLAIM**
**(Platteville and Ladder Creek Facilities)**
**Failure to Operate Designated Equipment with No Detectable Emissions in Violation of Subpart KKK**

124.    The United States and Colorado reallege and incorporate the previous Paragraphs as if fully set forth within.

125.    Certain equipment may be designated under Subpart KKK for "no detectable emissions," as indicated by an instrument reading of no less than 500 ppm above background. 40 C.F.R. §§ 60.482-2(e), 60.482-3(i), 60.482-7(f); and 5 Colo. Code Regs. § 1001-8:A.

126.    A pump in light liquid service that is designated for no detectable emissions may be exempt from the monitoring, repair, and barrier fluid system requirements at 40 C.F.R. § 60.482-2(a), (c), and (d) if the pump (1) has no externally actuated shaft penetrating the pump housing and (2) is demonstrated to be operating with no detectable emissions.  40 C.F.R. § 60.482-2(e); 5 Colo. Code Regs. § 1001-8:A.

127.    Except during pressure releases, pressure relief devices shall be operated with no detectable emissions no later than five days after a pressure release.  40 C.F.R. § 60.482-4; 5 Colo. Code Regs. §1001-8:A.

128.    A valve in gas/vapor service and in light liquid service that is designated for no detectable emissions may be exempt from the monitoring requirements of 40 C.F.R. § 60.482-7(a) if the valve (1) has no externally actuated shaft penetrating the pump housing and (2) is demonstrated to be operating with no detectable emissions. 40 C.F.R. § 60.482-7(f); 5 Colo. Code Regs. § 1001-8:A.

129.    From approximately October 29, 2010 to October 3, 2012, one or more valves designated for no detectable emissions at the Platteville Facility were demonstrated to be

operating with detectable emissions, as indicated by instrument readings greater than 500 ppm above background, in violation of 40 C.F.R. § 60.482-7(f) and 5 Colo. Code Regs. § 1001-8:A.

130.    From approximately August 28, 2012 to August 3, 2016, one or more pumps, valves, and pressure relief devices designated for no detectable emissions at the Ladder Creek Facility were demonstrated to be operating with detectable emissions, as indicated by instrument readings greater than 500 ppm above background, in violation of 40 C.F.R. §§ 60.482-2(e), 60.482-4, 60.482-7(f); and 5 Colo. Code Regs. §1001-8:A.

131.    Defendants did not remove the no detectable emissions designations from this equipment after obtaining an instrument reading greater than 500 ppm above background and did not thereafter implement the monitoring requirements at 40 C.F.R. §§ 60.482-2, 60.482-4, or 60.482-7, as applicable; and 5 Colo. Code Regs. § 1001-8:A.

132.    Each failure to operate designated equipment with no detectable emissions constitutes a separate violation of Subpart KKK, Section 111 of the Act, and 5 Colo. Code Regs. § 1001-8:A.

## PRAYER FOR RELIEF

**WHEREFORE**, the United States and Colorado respectfully request the Court enter judgment in favor of the United States and Colorado and against Defendants including the following relief:

A.    Permanently enjoin Defendants from further violating the Act, the regulations implementing the Act, the Colorado Act, and the regulations implementing the Colorado Act;

B.    Order Defendants to take appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Act, the regulations implementing the Act, the Colorado Act, and the regulations implementing the Colorado Act;

C.      Assess a civil penalty against Defendants for each violation of the applicable provisions of the Act, the Colorado Act, and the regulations implementing the Act and the Colorado Act, of up to $37,500 per day for each violation occurring between January 13, 2009 and November 2, 2015, and up to $109,024 per day for each violation occurring after November 2, 2015 for violations of federal law, and up to $15,000 per day for each violation of state law for each violation occurring before July 2, 2020, and up to $47,357 per day for each violation of state law occurring on or after July 2, 2020 and before January 1, 2022, and up to $49,020 per day for each violation of state law occurring on or after January 1, 2022; and

D.      Grant such other and further relief as the Court deems just and proper.


Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

*/s/ Devon Ahearn*
DEVON AHEARN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 514-2717
Fax: (202) 616-3531
Email: Devon.Ahearn@usdoj.gov
*Attorney for Plaintiff United States of America*


OF COUNSEL
Jessica Portmess
U.S. Environmental Protection Agency
1595 Wynkoop Street
Denver, CO 80202-1129

FOR THE STATE OF COLORADO, ON BEHALF
OF THE COLORADO DEPARTMENT OF
PUBLIC HEALTH AND ENVIRONMENT

PHIL WEISER
Attorney General
State of Colorado

*/s/ David Beckstrom*
DAVID BECKSTROM
Assistant Attorney General
Air Quality Unit
Natural Resources and Environment Section
Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 7th Floor
Denver, Colorado 80203
(303) 508-6306 (PHONE)
(303) 508-6039 (FAX)
David.Beckstrom@coag.gov
*Attorney for Plaintiff State of Colorado*